**FEDERAL DEPOSIT INSURANCE CORPORATION, substituted for Albany State Bank, Respondent,**

v.

**Howard Dwayne YATES, Margaret Lea Yates, Defendants,**

**and**

**Edith G. Holloway, Appellant.**

**No. WD 37567.**

Missouri Court of Appeals, Western District.

Nov. 4, 1986.

David K. Holdsworth, Krebbs and Holdsworth, Liberty, for appellant.

Robert B. Miner, Peter D. Runyan, Watkins, Boulware, Lucas & Miner, St. Joseph, for respondent.

Before BERREY, J., Presiding, and PRITCHARD and DIXON, JJ.

DIXON, Judge.

Defendant Edith Holloway appeals the trial court's grant of summary judgment in favor of plaintiff Bank in the Bank's replevin action to gain possession of certain farm machinery that had been used as collateral. The plaintiff, Albany State Bank, has become insolvent since the institution of this lawsuit. The FDIC is the substituted plaintiff on appeal.

Holloway asserts that the trial court erred in granting summary judgment because the Bank failed to show by unassailable proof that the defendants Yates defaulted on the loan, because Bank failed to first demand the surrender of the collateral as required by the security agreement, and because Bank failed to show its interest as creditor was superior to Holloway's ownership interest.

Howard and Margaret Yates are husband and wife. Howard is the son of defendant-appellant Holloway. The Yateses purchased a farm from Holloway and her husband, now deceased, in December 1978. An unsecured promissory note was executed in favor of the Holloways but by June 1983, only $4000 had been paid on the note.

In December 1982, the Yateses signed a promissory note in favor of Albany State Bank. Both also signed a security agreement giving Bank a security interest in specifically described farm goods and machinery. Both understood that the agreement was to give the Bank a lien on the included items. The Bank had filed a financing statement in the county of the Yateses' residence which covered "all livestock and machinery and feed and grain on hand." Only Howard Yates was named as the debtor and only Howard Yates signed the financing statement. Margaret Yates had signed other financing statements but she did not sign the financing statement covering "machinery" though she was aware that her husband signed it and he did it with her consent. The machinery itemized on the list that was attached to the security agreement, except for three items, was claimed jointly by Howard and Margaret Yates.

Due to their February 1983 financial situation, the Yateses began to consider how they could provide Holloway with some security on the promissory note they had executed in her favor. After consulting an attorney, they concluded that the Bank

might not have a "legal lien" on the machinery because of the "U.C.C. filing." Howard Yates then came up with the idea of giving his mother Edith Holloway a bill of sale on the machinery to pay the Yateses' note. In June 1983 Holloway received a "bill of sale" in exchange for the promissory note. The Yateses took the note but it was never marked paid. The Yateses retained possession of the machinery, used it, paid taxes on it and included it on their depreciation schedules.

Neither the Yateses nor Holloway talked with anyone at the Bank about the transfer of the machinery prior to Holloway's receipt of the bill of sale, and Holloway did nothing to check on security interests in the machinery prior to taking the bill of sale.

The promissory note from the Yateses to the bank matured in December 1983. The Yateses defaulted on the note and the Bank filed its petition in replevin against the Yateses and Edith Holloway. Holloway counter-claimed for attorney's fees. The Bank filed a motion for summary judgment, attaching an affidavit in support of replevin, exhibits and the deposition testimonies of the three defendants. The trial court dismissed Holloway's counterclaim and granted the Bank summary judgment. Holloway appeals from the grant of summary judgment.

In reviewing a grant of summary judgment, the record is taken in a light most favorable to the party against whom judgment was granted, and the burden is on the moving party to show by unassailable proof that there is no genuine issue of fact to be tried. *Miller v. Kruetz*, 643 S.W.2d 310, 312 (Mo.App.1982). A genuine issue of fact exists if there is the slightest doubt about the facts. *Id.* The whole record is reviewed, however, and the trial court's judgment will not be reversed if it is correct even if it was made on an incorrect basis. *Colbert v. Mutual Benefit Life Insurance Co.*, 608 S.W.2d 119, 120 (Mo.App. 1980).

In a single point relied on, Holloway claims summary judgment was erroneously granted because the movant Bank failed to show by unassailable proof that it "had the requisite entitlement to the property required for replevin." Holloway raises three areas where she believes the Bank's proof was deficient.

First, she claims the Bank did not sufficiently show a default on the promissory note by the Yateses, but instead only stated in conclusory language in its affidavit that a default occurred. Holloway relies on *State ex rel. Tallen v. Marsh*, 633 S.W.2d 458 (Mo.App.1982), in which the debtor sought a writ of prohibition in a prejudgment seizure action. *Id.* at 459. The court held that an affidavit lacking sufficient evidentiary facts robbed the trial court of jurisdiction to make a delivery order. *Id.* at 461.

■ In *Tallen*, the affidavit stated that defendant had failed to make required contract payments, therefore, plaintiff was entitled to possession of certain described property. The affidavit did not describe the contract, who the parties were, what payments were required and not made, or whether the payments were secured by a lien on the property sought. *Id.* Nor was any documentation attached to the affidavit. *Id.* The case at bar is readily distinguishable from *Tallen*. The affidavit in this case incorporates the petition in replevin and "all exhibits," attached thereto. The petition set forth more details than the affidavit concerning the terms of the promissory note and alleged that defendants Yates "are now in default for nonpayment." Included in the exhibits were copies of the promissory note and security agreement. The promissory note included a notation showing an outstanding balance and indicating that the last payment was made in May 1983. The affidavit was sufficient under Rule 74.04(e) to show the default for nonpayment by the Yateses.

■ The burden then shifted to the defendants to show that no default occurred if that was their contention. Facts stated in affidavits filed in connection with a motion for summary judgment stand admitted

when the party opposing the summary judgment fails to file a verified denial of those facts. *Goth v. Norman*, 693 S.W.2d 175, 176, 178 (Mo.App.1985). Holloway did not offer counter-affidavits to Bank's motion for summary judgment nor did she even file suggestions in opposition to the motion. The default was admitted and properly considered by the trial court.

Holloway next complains that the Bank was not entitled to possession of the collateral under the security agreement "until [Bank] made demand upon Defendants Yates to 'assemble the collateral and make it available to Lender at a place designated by Lender and reasonably convenient to both,' " and that the record is totally devoid of evidence of the Bank's compliance with that condition. Holloway cites no authority for her contention other than *Tallen, supra*, which she cites for the general proposition that the affidavit is insufficient.

■ The Bank did not have to plead or show such a demand because no such demand was required by the security agreement. The security agreement recites under the heading "DEFAULT AND SECURED PARTY'S RIGHTS AND REMEDIES":

[W]henever undersigned is in default hereunder, undersigned upon demand by Lender, shall assemble the collateral and make it available to Lender at a place designated by Lender and reasonably convenient to both.

The security agreement does not say that the Bank must demand the collateral but only that if the Bank does demand the collateral, then the "undersigned" must comply. The Bank or "Lender" had the option of choosing its remedy upon the default of the borrowers. The principle of *Tallen* has no application.

Finally, it is urged that the trial court erred in granting summary judgment because the Bank's "interest as a creditor was not established as being superior to appellant's ownership interest." In arguing this issue, appellant properly contends § 400.9–301(1)(c), RSMo 1978 is controlling. In relevant part, that section reads:

(1) [A]n unperfected security interest is subordinate to the rights of

. . . .

(c) in the case of goods, ... a person who is not a secured party and who is a ... buyer not in ordinary course of business to the extent that he gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected;

Article 9 "begins with the assumption that an unperfected security interest is good against the world." T. Quinn, UNIFORM COMMERCIAL CODE COMMENTARY AND LAW DIGEST § 9–301[A][8] (1978). That assertion is based upon and supported by § 400.9–201, RSMo 1978, which in its first sentence states, "Except as otherwise provided by this Chapter a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors." "The sentence means what it says, and the secured creditor, even an unperfected secured creditor, has greater rights in his collateral than any other creditor unless Article Nine provides otherwise." J. White & R. Summers, HANDBOOK OF THE LAW UNDER THE UNIFORM COMMERCIAL CODE § 25–2 (2d ed. 1980).

The exceptions to that assumption relevant to this case are found in § 400.9–301, RSMo 1978.

Thus, unless Holloway can bring herself within the meaning of § 400.9–301(1)(c), the Bank's unperfected security interest will prevail over her claim to title. To bring herself within the exception, each one of the conditions set forth in the statute must be met.

■ The trial court found § 400.9–301(1)(c) to be controlling because it found that Holloway had knowledge of the Bank's lien. Holloway urges that this finding of prior knowledge is not supported by unassailable proof. That issue need not be reached or decided because Holloway did not satisfy that element of the statute which required her to "receive delivery of

the collateral." It is undisputed that the son and daughter-in-law Yates retained physical possession and custody of the equipment. The equipment was listed on the Yateses' tax return as owned property and depreciated as such. The Yateses paid the taxes assessed on the equipment and insured it against loss or damage.

Holloway argues that physical possession was impractical and that *Poplin v. Brown*, 200 Mo.App. 255, 205 S.W. 411 (1918) holds that delivery of a bill of sale constitutes delivery of personal property. It is doubtful that *Poplin v. Brown* contains any such holding, but the facts presented here do not show that Holloway "received delivery of the collateral."

The trial court judgment is affirmed.

All concur.